# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JUANITA FAYE HOLTSCHNEIDER,<br><br>Defendant. | Case No. 25-03143-01-CR-S-MDH |

## PLEA AGREEMENT

Pursuant to Rule 11(c)(1)(B) of the Federal Rules of Criminal Procedure, the parties described below have entered into the following plea agreement:

1. **The Parties.** The parties to this agreement are the United States Attorney's Office for the Western District of Missouri (otherwise referred to as "the Government" or "the United States"), represented by R. Matthew Price, United States Attorney, and Patrick Carney, Assistant United States Attorney, and the defendant, Juanita Faye Holtschneider ("the defendant"), represented by Scott Pierson.

The defendant understands and agrees that this plea agreement is only between her and the United States Attorney for the Western District of Missouri, and that it does not bind any other federal, state, or local prosecution authority or any other government agency, unless otherwise specified in this agreement.

2. **Defendant's Guilty Plea.** The defendant agrees to and hereby does plead guilty to Count 1 of the Information charging her with wire fraud, in violation of 18 U.S.C. § 1343. The defendant further agrees to and hereby does plead guilty to Count 2 of the Information charging her with failing to pay over employee taxes, in violation of 26 U.S.C. § 7202. The defendant

also agrees to forfeit to the United States the property described in the forfeiture allegation. By entering into this plea agreement, the defendant admits that she knowingly committed these offenses and is in fact guilty of these offenses.

**3. Factual Basis for Guilty Plea.** The parties agree that the facts constituting the offenses to which the defendant is pleading guilty to are as follows:

> The defendant, Juanita Faye Holtschneider (Holtschneider), was a resident of Marshfield, Webster County, Missouri, in the Western District of Missouri. In 2015, Holtschneider was hired by the victim (Victim), which is a business located in Springfield, Greene County, Missouri, also within the Western District of Missouri. Holtschneider's position with the Victim was as an accountant who handled the company's collection and payment of employment taxes, signing and filing of Form 941 documents with the Internal Revenue Service (IRS), as well as preparing bill payment reports, preparing employee payroll, and the monitoring of company software that addressed company payments. In addition to her other duties, Holtschneider was responsible the Victim's QuickBooks software that automated payments of employee taxes to the United States Department of the Treasury. Holtschneider was entrusted with these responsibilities so that the Victim's requirements to pay over employee taxes would occur regularly and without delay. By signing and filing the Form 941 with the IRS, Holtschneider knew that she was the employee that was responsible to pay employee taxes on behalf of the Victim to the IRS. Holtschneider was employed with the Victim between 2015, until August 31, 2024, when her employment was terminated. These dates of employment with the Victim are approximate.
>
> In August of 2024, the owner of the victim company (RG), received notices from the IRS that advised him that his company's employment taxes had not paid. RG reviewed the company's QuickBooks and noted that the software had been altered so that employment taxes collected from its employees were not paid to the IRS, but to the personal bank account of Holtschneider. Holtschneider did not have authority or access to the Victim's bank accounts, but she had access to QuickBooks, which allowed her to redirect funds that were supposed to be paid to authorized recipients instead to her own personal bank account. Upon review of the Victim's QuickBooks records, there had been 102 different transactions that caused wire transmissions that caused money from the business account of the Victim to be paid to Holtschneider's personal bank account with Arvest Bank, which is headquartered and operated from Bentonville, Arkansas. The unauthorized and fraudulent transactions occurred between April 1, 2023, through August 31, 2024, said dates being approximate. The business account for the Victim was with Guaranty Bank, which is located in Springfield, Greene County, Missouri, within the Western District of Missouri. Finally, the IRS and the

2

Department of Treasury, into which the Victim's employee taxes should have ultimately been paid, is headquartered and located within Washington D.C. Each of the aforementioned 102 transactions resulted in an interstate wire transmission between the Victim, its financial institution, and Holtschneider's personal bank account.

Shortly thereafter, agents with the Internal Revenue Service-Criminal Investigations (IRS-CI) were contacted and investigated the Victim's stolen employee taxes. Agents confirmed the information obtained by RG from the Victim's QuickBooks. Agents confirmed that the employment taxes of the Victim for the second quarter of 2023 through the second quarter of 2024 had not been paid over to the IRS and the United States Department of the Treasury. Agents determined from agency records that Holtschneider had signed the Victim's Forms 941 documents. These documents stated, among other things, that Holtschneider was aware of the responsibility to pay employee taxes to the IRS and the Department of the Treasury. Witnesses with the Victim company, as well as the documents filed with the IRS, stated that Holtschneider was the person at the business that was responsible for paying over the employee taxes to the federal government.

Agents with IRS-CI interviewed Holtschneider. Holtschneider admitted to agents that she was aware of her responsibility to pay over the Victim's employment taxes to the IRS. Holtschneider admitted that she used the Victim's QuickBooks software to intentionally redirect where company employment tax deposits were supposed to be sent. Holtschneider did not have permission by anyone at the business to redirect these payments and her actions intentionally caused the Victim's employment taxes to not be paid to the IRS and the Department of the Treasury. Holtschneider admitted that she had submitted her personal bank account and routing information for the vendor titled "United States Treasury" to ensure that all withheld Victim employee taxes were paid into her bank account. As a result, these unauthorized and fraudulent deposit transmissions were made from the Victim's QuickBooks software to its business account with Guaranty Bank, both entities in Springfield, Greene County, Missouri. With the change made by Holtschneider to the Victim's QuickBooks, the authorized wire transactions that were supposed to be ultimately directed to the IRS and the United States Department of the Treasury located in Washington, D.C., were fraudulently redirected into her personal bank account with Arvest Bank, which is headquartered and operated in Bentonville, Arkansas. Each of the aforementioned transmissions resulted in wire transmissions that traveled across interstate boundaries, and in interstate commerce.

Specifically, on or about August 3, 2023, said date being approximate, in Greene County, Missouri, within the Western District of Missouri, JUANITA FAYE HOLTSCHNEIDER, for the purpose of executing or attempting to execute the above-described scheme and artifice to defraud, and embezzle money and property by means of false and fraudulent pretenses, by claiming she had rightful

3

and lawful permission to obtain said monies, knowingly caused to be transmitted in interstate commerce, by means of wire communication, wire and radio sounds and signals, that being the electronic wire transmission through a bank withdrawal and deposit into another bank account in the amount of $4,470.08, sent via wire transmission from the Victim's bank account, located in Springfield, Greene County, Missouri located in the Western District of Missouri, being deposited into HOLTSCHNEIDER'S personal bank account, headquartered and managed with Arvest Bank, located in Bentonville, Arkansas, therein constituting interstate commerce.

Finally, Holtschneider's willfulness is be proven by several facts, which include:

- The victim would testify that Holtschneider was "very aware" of her obligations to pay over the Victim's employment taxes to the IRS. Further, Holtschneider admitted to agents that she was aware of her responsibility as a paid employee of the Victim.

- The Victim received Forms W-2 reflecting wages and withheld employment taxes at the end of each tax year. *United States v. Gilbert*, 266 F.3d 1180, 1183-85 (9th Cir. 2001) (Holding that a defendant's willfulness can be shown when she voluntarily and intentionally paid net wages to employees with knowledge that withholding taxes were not being remitted to the IRS).

- Holtschneider consistently followed a pattern of failing to pay employment taxes, to the IRS and the United States Department of the Treasury that involved 102 fraudulent wire transmission fraudulently redirecting employee tax payments from the Victim to the lawful recipients in the federal government. Each of these fraudulent transactions occurred as intended by Holtschneider when, without authority, she altered the Victim's payment account of employee taxes from the IRS to her personal bank account between the second quarter of 2023, through the second quarter of 2024.

The aforementioned fraudulent wire transmissions and failure to pay employment taxes to the IRS and the United States Department of the Treasury, occurred between April 1, 2023, through August 31, 2023, and resulted in Holtschneider embezzling $251,386 in employee collected tax monies, and an additional $32,491 in the Victim's business account funds, for a total amount of stolen monies of $283,878.

All in violation of Title 18, United States Code, Section 1343 and Title 26, United States Code, Section 7202.

4

4. **Use of Factual Admissions and Relevant Conduct.** The defendant acknowledges, understands and agrees that the admissions contained in Paragraph 3 and other portions of this plea agreement will be used for the purpose of determining her guilt and advisory sentencing range under the United States Sentencing Guidelines ("U.S.S.G."), including the calculation of the defendant's offense level in accordance with U.S.S.G. § 1B1.3(a)(2). The defendant acknowledges, understands and agrees that all other uncharged related criminal activity may be considered as "relevant conduct" pursuant to U.S.S.G. § 1B1.3(a)(2) in calculating the offense level for the charges to which she is pleading guilty.

5. **Statutory Penalties.** The defendant understands that upon her plea of guilty to Count 1 of the Information charging her with wire fraud, the maximum penalty the Court may impose is not more than 20 years of imprisonment, a $250,000 fine, three years of supervised release, a $100 mandatory special assessment, and an order of restitution. The defendant understands that this offense is a Class C felony. Further, upon her plea of guilty to Count 2 of the Information charging her with failure to pay employment taxes, the maximum penalty the Court may impose is not more than five years of imprisonment, a $10,000 fine, three years of supervised release, a $100 mandatory special assessment, and an order of restitution. The defendant further understands that this offense is a Class D felony.

6. **Sentencing Procedures.** The defendant acknowledges, understands and agrees to the following:

> a. in determining the appropriate sentence, the Court will consult and consider the United States Sentencing Guidelines promulgated by the United States Sentencing Commission; these Guidelines, however, are advisory in nature, and the Court may impose a sentence either less than or greater than the defendant's applicable Guidelines range, unless the sentence imposed is "unreasonable";

5

b. the Court will determine the defendant's applicable Sentencing Guidelines range at the time of sentencing;

c. in addition to a sentence of imprisonment, the Court may impose a term of supervised release of up to three years for Counts 1 and 2 of the Information, and the Court must impose a period of supervised release if a sentence of imprisonment of more than one year is imposed;

d. if the defendant violates a condition of her supervised release, the Court may revoke her supervised release and impose an additional period of imprisonment of up to two years for Counts 1 and 2 of the Information without credit for time previously spent on supervised release. In addition to a new term of imprisonment, the Court also may impose a new period of supervised release, the length of which cannot exceed three years for Counts 1 and 2, respectively, less the term of imprisonment imposed upon revocation of the defendant's first supervised release;

e. the Court may impose any sentence authorized by law, including a sentence that is outside of, or departs from, the applicable Sentencing Guidelines range;

f. any sentence of imprisonment imposed by the Court will not allow for parole;

g. the Court is not bound by any recommendation regarding the sentence to be imposed or by any calculation or estimation of the Sentencing Guidelines range offered by the parties or the United States Probation Office;

h. the defendant may not withdraw her guilty plea solely because of the nature or length of the sentence imposed by the Court;

i. the defendant agrees that the United States may institute civil, judicial or administrative forfeiture proceedings against all forfeitable assets in which the defendant has an interest, and that she will not contest any such forfeiture proceedings;

j. the defendant agrees to forfeit all interests she owns or over which she exercises control, directly or indirectly, in any asset that is subject to forfeiture to the United States either directly or as a substitute for property that was subject to forfeiture but is no longer available for the reasons set forth in 21 U.S.C. § 853(p), including, but not limited to, the following specific property: a money judgment of $283,878.00. With respect to any asset which the defendant has agreed to forfeit, the defendant waives any constitutional and statutory challenges in any manner (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this plea agreement on any grounds,

6

including that the forfeiture constitutes an excessive fine or punishment under the Eighth Amendment to the United States Constitution;

k. the defendant agrees to fully and truthfully disclose the existence, nature and location of all assets forfeitable to the United States, either directly or as a substitute asset, in which she and her co-conspirators have or had any direct or indirect financial interest, or exercise or exercised control, directly or indirectly, during the period from November 2023 to the present. The defendant also agrees to fully and completely assist the United States in the recovery and forfeiture of all such forfeitable assets;

l. the defendant agrees to take all necessary steps to comply with the forfeiture matters set forth herein before her sentencing; and

m. within 10 days of the execution of this plea agreement, at the request of the United States Attorney's Office (USAO), the defendant agrees to execute and submit: (1) a Tax Information Authorization form; (2) an Authorization to Release Information; (3) a completed financial disclosure statement; and (4) copies of financial information that the defendant submits to the U.S. Probation Office. The defendant understands that the United States will use the financial information when making its recommendation to the Court regarding the defendant's acceptance of responsibility.

**7. Government's Agreements.** Based upon evidence in its possession at this time, the United States Attorney=s Office for the Western District of Missouri, as part of this plea agreement, agrees not to bring any additional charges against defendant for any federal criminal offenses related to the Information for which it has venue, and which arose out of the defendant's conduct described above.

The defendant understands that this plea agreement does not foreclose any prosecution for an act of murder or attempted murder, an act or attempted act of physical or sexual violence against the person of another, or a conspiracy to commit any such acts of violence or any criminal activity of which the United States Attorney for the Western District of Missouri has no knowledge.

7

The defendant recognizes that the United States' agreement to forego prosecution of all of the criminal offenses with which the defendant might be charged is based solely on the promises made by the defendant in this agreement. If the defendant breaches this plea agreement, the United States retains the right to proceed with the original charges and any other criminal violations established by the evidence. The defendant expressly waives her right to challenge the initiation of the dismissed or additional charges against her if she breaches this agreement. The defendant expressly waives her right to assert a statute of limitations defense if the dismissed or additional charges are initiated against her following a breach of this agreement. The defendant further understands and agrees that if the Government elects to file additional charges against her following her breach of this plea agreement, she will not be allowed to withdraw her guilty plea.

**8. Preparation of Presentence Report.** The defendant understands the United States will provide to the Court and the United States Probation Office a government version of the offense conduct. This may include information concerning the background, character, and conduct of the defendant, including the entirety of her criminal activities. The defendant understands these disclosures are not limited to the counts to which she has pleaded guilty. The United States may respond to comments made or positions taken by the defendant or the defendant's counsel and to correct any misstatements or inaccuracies. The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject only to any limitations set forth in this plea agreement. The United States and the defendant expressly reserve the right to speak to the Court at the time of sentencing pursuant to Rule 32(i)(4) of the Federal Rules of Criminal Procedure.

9. **Withdrawal of Plea.** Either party reserves the right to withdraw from this plea agreement for any or no reason at any time prior to the entry of the defendant's pleas of guilty and its formal acceptance by the Court. In the event of such withdrawal, the parties will be restored to their pre-plea agreement positions to the fullest extent possible. However, after the pleas have been formally accepted by the Court, the defendant may withdraw her pleas of guilty only if the Court rejects the plea agreement or if the defendant can show a fair and just reason for requesting the withdrawal. The defendant understands that if the Court accepts her pleas of guilty and this plea agreement but subsequently imposes a sentence that is outside the defendant's applicable Sentencing Guidelines range or imposes a sentence that the defendant does not expect, like or agree with, she will not be permitted to withdraw her pleas of guilty.

10. **Agreed Guidelines Applications.** With respect to the application of the Sentencing Guidelines to this case, the parties stipulate and agree as follows:

   a. The Sentencing Guidelines do not bind the Court and are advisory in nature. The Court may impose a sentence that is either above or below the defendant's applicable Guidelines range, provided the sentence imposed is not "unreasonable";

   b. There is no agreement between the parties regarding the defendant's criminal history category. The parties agree that the Court will determine her applicable criminal history category after receipt of the presentence investigation report prepared by the United States Probation Office;

   c. The applicable Guidelines sections that control the defendant's charges under Counts 1 and 2 of the Information are U.S.S.G. § 2B1.1 and § 2T1.6, respectively, which provide for a base offense level of 7 for Count 1, and a base offense level of 20 for Count 2;

   d. The parties may argue at sentencing any other applicable enhancements or reductions;

   e. The defendant has admitted her guilt and clearly accepted responsibility for her actions and has assisted authorities in the investigation or prosecution of her own misconduct by timely notifying authorities of her intention to enter a plea

9

Case 6:25-cr-03143-MDH    Document 13    Filed 10/17/25    Page 9 of 19

of guilty, thereby permitting the Government to avoid preparing for trial and permitting the Government and the Court to allocate their resources efficiently. Therefore, she is entitled to either a two or three-level reduction pursuant to § 3E1.1(a) and (b) of the Sentencing Guidelines, unless the defendant (1) fails to abide by all of the terms and conditions of this plea agreement and her pretrial release; or (2) attempts to withdraw her guilty pleas, violates the law, or otherwise engages in conduct inconsistent with her acceptance of responsibility;

  f. The parties agree that the Court will determine the defendant's applicable criminal history category after receipt of the presentence investigation report prepared by the United States Probation Office;

  g. The defendant understands that the estimate of the parties with respect to the Guidelines computation set forth in the subsections of this paragraph does not bind the Court or the United States Probation Office with respect to the appropriate Guidelines levels. Additionally, the failure of the Court to accept these stipulations will not, as outlined in Paragraph 9 of this plea agreement, provide the defendant with a basis to withdraw her pleas of guilty;

  h. Both parties may request any sentence deemed appropriate. The agreement by the parties regarding any sentencing recommendation is not binding upon the Court or the United States Probation Office and the Court may impose any sentence authorized by law, including any sentence outside the applicable Guidelines range that is not "unreasonable;"

  i. The defendant consents to judicial fact-finding by a preponderance of the evidence for all issues pertaining to the determination of the defendant's sentence, including the determination of any mandatory minimum sentence (including the facts that support any specific offense characteristic or other enhancement or adjustment), and any legally authorized increase above the normal statutory maximum. The defendant waives any right to a jury determination beyond a reasonable doubt of all facts used to determine and enhance the sentence imposed and waives any right to have those facts alleged in the Information. The defendant also agrees that the Court, in finding the facts relevant to the imposition of sentence, may consider any reliable information, including hearsay; and

  j. The defendant understands and agrees that the factual admissions contained in Paragraph 3 of this plea agreement, and any admissions that she will make during her plea colloquy, support the imposition of the agreed-upon Guidelines calculations contained in this agreement.

**11. Effect of Non-Agreement on Guidelines Applications.** The parties understand, acknowledge, and agree that there are no agreements between the parties with respect to any

Sentencing Guidelines issues other than those specifically listed in Paragraph 10, and its subsections. As to any other Guidelines issues, the parties are free to advocate their respective positions at the sentencing hearing.

12. **Change in Guidelines Prior to Sentencing.** The defendant agrees that if any applicable provision of the Guidelines changes after the execution of this plea agreement, then any request by defendant to be sentenced pursuant to the new Guidelines will make this plea agreement voidable by the United States at its option. If the Government exercises its option to void the plea agreement, the United States may charge, reinstate, or otherwise pursue any and all criminal charges that could have been brought but for this plea agreement.

13. **Government's Reservation of Rights.** The defendant understands that the United States expressly reserves the right in this case to:

    a. oppose or take issue with any position advanced by defendant at the sentencing hearing which might be inconsistent with the provisions of this plea agreement;

    b. comment on the evidence supporting the charges in the Information;

    c. oppose any arguments and requests for relief the defendant might advance on an appeal from the sentences imposed and that the United States remains free on appeal or collateral proceedings to defend the legality and propriety of the sentence actually imposed, even if the Court chooses not to follow any recommendation made by the United States; and

    d. oppose any post-conviction motions for reduction of sentence, or other relief.

14. **Waiver of Constitutional Rights.** The defendant, by pleading guilty, acknowledges that she has been advised of, understands, and knowingly and voluntarily waives the following rights:

    a. the right to plead not guilty and to persist in a plea of not guilty;

11

b. the right to be presumed innocent until her guilt has been established beyond a reasonable doubt at trial;

c. the right to a jury trial, and at that trial, the right to the effective assistance of counsel;

d. the right to confront and cross-examine the witnesses who testify against her;

e. the right to compel or subpoena witnesses to appear on her behalf; and

f. the right to remain silent at trial, in which case her silence may not be used against her.

The defendant understands that by pleading guilty, she waives or gives up those rights and that there will be no trial. The defendant further understands that if she pleads guilty, the Court may ask her questions about the offense or offenses to which he pleaded guilty, and if the defendant answers those questions under oath and in the presence of counsel, her answers may later be used against her in a prosecution for perjury or making a false statement. The defendant also understands she has pleaded guilty to a felony offense and, as a result, will lose her right to possess a firearm or ammunition and might be deprived of other rights, such as the right to vote or register to vote, hold public office, or serve on a jury.

15. **Waiver of Appellate and Post-Conviction Rights.**

   a. The defendant acknowledges, understands and agrees that by pleading guilty pursuant to this plea agreement she waives her right to appeal or collaterally attack a finding of guilt following the acceptance of this plea agreement, except on grounds of (1) ineffective assistance of counsel; or (2) prosecutorial misconduct.

   b. The defendant expressly waives her right to appeal her sentence, directly or collaterally, on any ground except claims of (1) ineffective assistance of counsel; (2) prosecutorial misconduct; or (3) an illegal sentence. An "illegal sentence" includes a sentence imposed in excess of the statutory maximum, but does *not* include less serious sentencing errors, such as a misapplication of the Sentencing Guidelines, an abuse of discretion, or the imposition of an unreasonable sentence. However, if the United States exercises its right to appeal

12

the sentence imposed as authorized by 18 U.S.C. § 3742(b), the defendant is released from this waiver and may, as part of the Government=s appeal, cross-appeal her sentence as authorized by 18 U.S.C. § 3742(a) with respect to any issues that have not been stipulated to or agreed upon in this agreement.

16. **Financial Obligations.** By entering into this plea agreement, the defendant represents that she understands and agrees to the following financial obligations:

    a. The defendant agrees to pay restitution of at least $251,386 for the tax loss to the Internal Revenue Service ("IRS"), pursuant to 18 U.S.C. § 3663(a)(3), which includes the loss related to the offense to which she is pleading guilty and the loss from uncharged related criminal activity, plus statutory interest calculated through the date of sentencing, said amount to be determined by the Court, payable to the following address:

> IRS-RACS
> Attn: Mail Stop 6261, Restitution
> 333 West Pershing Avenue
> Kansas City, Missouri 64108

    b. The defendant also agrees to pay restitution to G2 Materials Handling in the amount of $32,491, payable to the following address:

> G2 Material Handling
> c/o Ryan Gorrell
> 820 N. West
> Springfield, Missouri 65802

    c. The defendant agrees that the total amount of restitution reflected in this agreement results from the defendant's fraudulent and illegal conduct.

    d. The defendant understands that the Court's restitution order in this case is criminal restitution and does not include civil penalties that may be imposed and adjustments that may be made by the IRS in a civil examination of the defendant's taxes following the completion of the criminal case.

    e. All restitution payments shall be paid by check, shall include this case number in the memo line, and shall be delivered to the Clerk's office or addressed to the Clerk's office at the following address:

> United States District Court Clerk's Office
> Western District of Missouri
> Charles Evans Whittaker Courthouse
> 400 E. 9th Street, Rm. 1510

Case 6:25-cr-03143-MDH   Document 13   Filed 10/17/25   Page 13 of 19

Kansas City, Missouri 64106

  f. The defendant agrees to pay restitution as ordered by the Court in any restitution order entered pursuant to this plea agreement. The defendant further agrees that restitution is due and payable immediately after the judgment is entered and is subject to immediate enforcement in full, by the United States. If the Court imposes a schedule of payments, the defendant agrees that the schedule of payments is a schedule of the minimum payment due, and that the payment schedule does not prohibit or limit the methods by which the United States may immediately enforce the judgment in full.

  g. The defendant is entitled to receive credit for restitution paid pursuant to this plea agreement against those assessed civil tax liabilities due and owing for the same periods for which restitution was ordered. The defendant understands that he is not entitled to credit with the IRS for any payment until the payment is received by the IRS. The defendant further understands and agrees that the plea agreement does not resolve the defendant's civil tax liabilities, that the IRS may seek additional taxes, interest and penalties from the defendant relating to the conduct covered by this plea agreement and for conduct relating to another time period, and that satisfaction of the restitution debt does not settle, satisfy, or compromise the defendant's obligation to pay any remaining civil tax liability. The defendant authorizes release of information to the IRS for purposes of making the civil tax and restitution-based assessments.

  h. The United States may use the Federal Debt Collection Procedures Act and any other remedies provided by law to enforce any restitution order that may be entered as part of the sentence in this case and to collect any fine.

  i. The defendant will fully and truthfully disclose all assets and property in which he has any interest, or over which the defendant exercises control, directly or indirectly, including assets and property held by a spouse, nominee or other third party. The defendant's disclosure obligations are ongoing and are in force from the execution of this agreement until the defendant has satisfied the restitution order in full.

  j. Within ten days of the execution of this plea agreement, at the request of the United States Attorney's Office ("USAO"), the defendant agrees to execute and submit: (1) a Tax Information Authorization form; (2) an Authorization to Release Information; (3) a completed financial disclosure statement; and (4) copies of financial information that the defendant submits to the United States Probation Office. The defendant understands that the United States will use the financial information when making its recommendation to the Court regarding the defendant's acceptance of responsibility.

14

k. At the request of the USAO, the defendant agrees to undergo any polygraph examination the United States might choose to administer concerning the identification and recovery of forfeitable assets, including substitute assets, and restitution.

l. The defendant hereby authorizes the USAO to obtain a credit report pertaining to her to assist the USAO in evaluating the defendant's ability to satisfy any financial obligations imposed as part of the sentence.

m. The defendant understands that a Special Assessment will be imposed as part of the sentence in this case. The defendant promises to pay the Special Assessment of **$200** by submitting a satisfactory form of payment to the Clerk of the Court prior to appearing for the sentencing proceeding in this case. The defendant agrees to provide the Clerk's receipt as evidence of her fulfillment of this obligation at the time of sentencing.

n. The defendant certifies that she has made no transfer of assets or property for the purpose of: (1) evading financial obligations created by this Agreement; (2) evading obligations that may be imposed by the Court; or (3) hindering efforts of the USAO to enforce such financial obligations. Moreover, the defendant promises that she will make no such transfers in the future.

o. In the event the United States learns of any misrepresentation in the financial disclosure statement, or of any asset in which the defendant had an interest at the time of this plea agreement that is not disclosed in the financial disclosure statement, and in the event such misrepresentation or nondisclosure changes the estimated net worth of the defendant by ten thousand dollars ($10,000) or more, the United States may at its option: (1) choose to be relieved of its obligations under this plea agreement; or (2) let the plea agreement stand, collect the full forfeiture, restitution and fines imposed by any criminal or civil judgment, and also collect 100% (one hundred percent) of the value of any previously undisclosed assets. The defendant agrees not to contest any collection of such assets. In the event the United States opts to be relieved of its obligations under this plea agreement, the defendant's previously entered pleas of guilty shall remain in effect and cannot be withdrawn.

17. **Waiver of FOIA Request.** The defendant waives all of her rights, whether asserted directly or by a representative, to request or receive, or to authorize any third party to request or receive, from any department or agency of the United States any records pertaining to the investigation or prosecution of this case including any records that may be sought under the Freedom of Information Act, 5 U.S.C. § 552, or the Privacy Act of 1974, 5 U.S.C. § 552a.

**18. Waiver of Claim for Attorney's Fees.** The defendant waives all of her claims under the Hyde Amendment, 18 U.S.C. § 3006A, for attorney's fees and other litigation expenses arising out of the investigation or prosecution of this matter.

**19. Defendant's Breach of Plea Agreement.** If the defendant commits any crimes, violates any conditions of release, or violates any term of this plea agreement between the signing of this plea agreement and the date of sentencing, or fails to appear for sentencing, or if the defendant provides information to the Probation Office or the Court that is intentionally misleading, incomplete, or untruthful, or otherwise breaches this plea agreement, the United States will be released from its obligations under this agreement. The defendant, however, will remain bound by the terms of the agreement, and will not be allowed to withdraw her plea of guilty.

The defendant also understands and agrees that in the event she violates this plea agreement, all statements made by her to law enforcement agents subsequent to the execution of this plea agreement, any testimony given by her before a grand jury or any tribunal or any leads from such statements or testimony shall be admissible against her in any and all criminal proceedings. The defendant waives any rights that she might assert under the United States Constitution, any statute, Rule 11(f) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence, or any other federal rule that pertains to the admissibility of any statements made by her subsequent to this plea agreement.

**20. Defendant's Representations.** The defendant acknowledges that she has entered into this plea agreement freely and voluntarily after receiving the effective assistance, advice and approval of counsel. The defendant acknowledges that she is satisfied with the assistance of counsel, and that counsel has fully advised her of her rights and obligations in connection with

16

this plea agreement. The defendant further acknowledges that no threats or promises, other than the promises contained in this plea agreement, have been made by the United States, the Court, her attorneys, or any other party to induce her to enter her pleas of guilty.

21. **Tax Consequences.**

   a. Pursuant to 18 U.S.C. § 3663(a)(3), the defendant agrees to pay restitution to the Internal Revenue Service for the 2018 through 2022 tax years, as set forth in the factual basis section of this plea agreement.

   b. The defendant agrees that the total amount of restitution reflected in this agreement results from his fraudulent conduct, and he will be estopped in any subsequent administrative or judicial civil proceeding from denying his liability for the civil fraud penalty for the 2012 through 2022 tax years, inclusive, under 26 U.S.C. § 6663.

   c. The defendant agrees to pay Title 26 interest on the restitution amount; interest runs from the last date prescribed for payment of the relevant tax liability until the IRS receives payment in full. The Government will provide an updated interest figure at sentencing, which amount the defendant agrees will be included in the Court's restitution order.

   d. The defendant agrees to file, prior to sentencing, complete and correct initial or amended tax returns for the years in issue, and that he will not file thereafter any claims for a refund of taxes, penalties, or interest for amounts attributable to the returns filed incident to the plea. If full payment cannot be made immediately, the defendant agrees to make a complete and accurate financial disclosure to the IRS on forms prescribed by the IRS (including, but not limited to, IRS Form 433-A and Form 433-B, as appropriate), and to disclose to the IRS any and all additional financial information and financial statements provided to the probation office.

22. **IRS Authority to Use Restitution Order as the Basis for a Civil Assessment.** If the Court orders the defendant to pay restitution to the IRS for the filing of false tax returns and the failure to pay tax, either directly as part of the sentence or as a condition of supervised release, the IRS will use the restitution order as the basis for a civil assessment pursuant to 26 U.S.C. § 6201(a)(4). The defendant does not have the right to challenge the amount of this assessment. *See* 26 U.S.C. § 6201(a)(4)(C). Neither the existence of a restitution payment

schedule nor the defendant's timely payment of restitution according to that schedule will preclude the IRS from administrative collection of the restitution-based assessment, including levy and distraint under 26 U.S.C. § 6331.

23. **No Undisclosed Terms.** The United States and defendant acknowledge and agree that the above-stated terms and conditions, together with any written supplemental agreement that might be presented to the Court in camera, constitute the entire plea agreement between the parties, and that any other terms and conditions not expressly set forth in this agreement or any written supplemental agreement do not constitute any part of the parties= agreement and will not be enforceable against either party.

24. **Standard of Interpretation.** The parties agree that, unless the constitutional implications inherent in plea agreements require otherwise, this plea agreement should be interpreted according to general contract principles and the words employed are to be given their normal and ordinary meanings. The parties further agree that, in interpreting this agreement, any

drafting errors or ambiguities are not to be automatically construed against either party, whether or not that party was involved in drafting or modifying this agreement.

R. Matthew Price
United States Attorney

Dated: 10/7/2025

_____
Patrick Carney
Assistant United States Attorney

I have consulted with my attorney and fully understand all of my rights with respect to the offenses charged in the Information. Further, I have consulted with my attorney and fully understand my rights with respect to the provisions of the Sentencing Guidelines. I have read this plea agreement and carefully reviewed every part of it with my attorney. I understand this plea agreement and I voluntarily agree to it.

Dated: 10/5/25

_____
Juanita Faye Holtschneider
Defendant

I am defendant Juanita Faye Holtschneider's attorney. I have fully explained to her, her rights with respect to the offenses charged in the Information. Further, I have reviewed with her the provisions of the Sentencing Guidelines which might apply in this case. I have carefully reviewed every part of this plea agreement with her. To my knowledge, Juanita Faye Holtschneider's decision to enter into this plea agreement is an informed and voluntary one.

Dated: 10/5/25

_____
Scott Pierson
Attorney for Defendant