**IN THE UNITED STATES DISTRICT COURT FOR THE**
**WESTERN DISTRICT OF MISSOURI**
**SOUTHERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | Case No: 25-03143-01-CR-S-MDH |
| JUANITA FAYE HOLTSCHNEIDER, | |
| Defendant. | |

## UNITED STATES' SENTENCING MEMORANDUM

The United States of America, by and through R. Matthew Price, United States Attorney for the Western District of Missouri, and undersigned counsel, respectfully submits this sentencing memorandum in the above-captioned matter, set for a sentencing hearing on May 12, 2026. For the reasons set forth below, the United States requests that upon consideration of the sentencing factors set forth pursuant to 18 U.S.C. § 3553, this Court sentence the defendant, Juanita Faye Holtschneider (hereinafter "Holtschneider"), to 41 months imprisonment with the Bureau of Prisons ("BOP"), three years of post-release supervisions, payment of restitution in the amount of $283,878.00, with $251,386.00 paid specifically to the Internal Revenue Service, and $32,491 paid specifically to G2 Material Handling, and the payment of a $200 Special Assessment, all of which falls within the parameters of the plea agreement.

## I. BACKGROUND

On October 16, 2025, Holtschneider pled guilty before United States Chief Magistrate Willie J. Epps, Jr., to a two-count Information charging her with wire fraud, pursuant to Title 18, United States Code, Section 1343, and failure to pay employment tax, pursuant to Title 26, United States Code, Section 7202, that arose from her fraud scheme in which she embezzled

approximately $283,878 from the Internal Revenue Service, G2 Materials Handling and its employees. (PSR 3 ¶¶ 1-2.) The final Presentence Investigation Report (PSR) was filed on April 24, 2025. (D.E. 17.) The Probation Officer made changes to several paragraphs of the Presentence Investigative Report ("PSR"). *Id.* The parties did not have any objections to the PSR. *Id.* The Government concurs with the findings of the PSR.

The sentencing hearing is scheduled for May 12, 2026. Based on the facts set forth below, the United States respectfully requests that its recommendation of 41 months imprisonment be adopted by this Honorable Court as an appropriate sentence considering the various factors set forth under § 3553(a), and the additional facts associated with this case and the defendant.

## II. LEGAL STANDARD

Although the Sentencing Guidelines are no longer mandatory, *United States v. Booker*, 543 U.S. 220 (2005), sentencing still begins with a properly calculated advisory Sentencing Guidelines range. *See Gall v. United States*, 128 S. Ct. 586, 596 (2007); *Rita v. United States*, 127 S. Ct. 2456, 2464-65 (2007); *Booker*, 543 U.S. at 245-46; *United States v. Plaza*, 471 F.3d 928, 930 (8th Cir. 2006). Next, the Court must decide if a traditional departure under the Guidelines is appropriate, thus creating an advisory Guidelines sentencing range. *Plaza*, 471 F.3d at 930. After calculating the advisory Guidelines range, the Court considers that range, along with all the factors listed in 18 U.S.C. § 3553(a), in arriving at the final sentence. *Kimbrough v. United States*, 128 S. Ct. 558, 564 (2007); *Plaza*, 471 F.3d at 930. The district court, "utilizing the § 3553(a) sentencing factors, . . . can impose a more severe or more lenient sentence, as long as it is reasonable." *United States v. Gregg,* 467 F.3d 1126, 1128-29 (8th Cir. 2006). The § 3553(a) factors relevant to this matter are:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed – (A) to reflect the

2

seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; [and] (C) to protect the public from further crimes of the defendant . . . (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range established [under the Sentencing Guidelines]; . . . (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

### III. DISCUSSION

#### A. Statutory and Guidelines Calculations

The final PSR, filed on January 16, 2026, found the maximum term of imprisonment for Count One of the Information is 20 years, and Count Two of the Information is 5 years; a Guidelines imprisonment range of 33 months to 41 months, within Zone D, with Holtschneider being eligible for probation pursuant under the statute but prohibited under the Sentencing Guidelines; a statutory supervised release term of not more than three years; and a Guidelines supervised release term of between one year to three years.  (PSR 16-17, ¶¶ 88-89, 91-93.)  As noted previously, the United States concurs with the calculations within the PSR and believes the report is appropriate and consistent with the facts and evidence in this case.

#### B. Statutory Sentencing Factors

In most cases, the properly calculated Sentencing Guidelines range corresponds to a sentence that fully satisfies the 18 U.S.C. § 3553(a) factors.[1]  This is because a within-Guidelines

---

[1]The § 3553(a) factors include:
> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed-
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>> (B) to afford adequate deterrence to criminal conduct;
>> (C) to protect the public from further crimes of the defendant; and

3

sentence reflects the accumulated wisdom and expertise of the United States Sentencing Commission. *See Kimbrough*, 128 S. Ct. at 574. Consequently, only in rare cases with full consideration of the § 3553(a) factors call for a sentence outside the Guidelines range, either above or below. In this case, the facts and circumstances do not support a downward variance, and the United States respectfully submits that upon full consideration of these factors warrants a Guidelines Range Sentence of 41 months imprisonment, followed by 3 years of post-release supervision, payment of restitution, a finalized order of forfeiture, and payment of a special assessment of $200.

### 1. *Nature and Circumstances of the Offense*

Regarding the history of Holtschneider and her employment with G2 Materials Handling, she was hired as an accountant or bookkeeping type of employee who handled the company's collection and payment of employment taxes, the signing and filing of Form 941 documents with the Internal Revenue Service (IRS), as well as preparing bill payment reports, employee payroll, and the signing of all relevant and necessary tax documents. As a part of her job description, Holtschneider was responsible for the collection of employment taxes from the salaries of G2's employees and the payment of those collected taxes to the IRS.

---

(D) to provide the defendant with needed ... medical care, or other correctional treatment in the most effective manner;
(3) the kinds of sentences available;
(4) the kinds of sentence and the sentencing range established for-
    (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines ...;
(5) any pertinent policy statement ...;
(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct....

In August of 2024, the owner of the victim company (RG), received notices from the IRS that advised him that his company's employment taxes had not paid. RG reviewed the company's QuickBooks and noted that the software had been altered so that employment taxes collected from its employees were not paid to the IRS, but to the personal bank account of Holtschneider. Holtschneider did not have authority or access to the Victim's bank accounts, but she had access to QuickBooks, which allowed her to redirect funds that were supposed to be paid to authorized recipients instead to her own personal bank account. Upon review of the G2's QuickBooks records, there had been 102 different transactions that caused wire transmissions that removed money to be taken from the G2 business account and paid to Holtschneider's personal bank account with Arvest Bank. The unauthorized and fraudulent transactions occurred between approximately April 1, 2023, through August 31, 2024. Each of the 102 transactions resulted in an interstate wire transmission between G2, its financial institution, and Holtschneider's personal bank account while traveling across state boundaries. Each of these transactions constituted a separate felony offense of wire fraud, failure to pay employment taxes, money laundering, and even tax evasion because Holtschneider failed to disclose these embezzled funds on her personal income taxes. While Holtschneider has pled guilty to two felony counts in relation to her embezzlement scheme, her criminal acts span hundreds of different felony offenses that involved her theft of funds from G2, the IRS, and each employee, whose withheld taxes were stolen by the defendant. Ultimately, the scheme committed by Holtschneider not only embezzled hundreds of thousands of dollars, her acts involved hundreds of individual felony crimes that stole not only from G2 and the IRS, but also from the individual paychecks of each of G2's employees and ultimately all citizens within this country be embezzling essential tax dollars used for essential services.

5

While the defendant will likely try to mitigate her crimes by arguing to this Honorable Court that most of the financial harm was inflicted on the United States Government, the facts and circumstances of this case clearly shows that Holtschneider's scheme victimized far more people than just the IRS. Holtschneider's scheme involved a violation of the trust that was placed in her as an accountant or bookkeeper for her employer. Further, an important distinction should be that the financial records obtained by law enforcement in its investigation of Holtschneider's embezzlement occurred over approximately 12 months and involved her stealing of over a quarter million dollars in a relatively brief period. Holtschneider engaged in sophisticated efforts by creating false documents that concealed her embezzlement from G2 Handling Materials' ownership. Holtschneider continued her embezzlement until the IRS contacted the ownership of G2 and was only discontinued after she had been fired from her position. Had the IRS been less than diligent in their efforts, Holtschneider's scheme would have grown considerably and involved in the theft of tax monies that fund the essential services provided by the United States to all its citizens. Ultimately, while the PSR identifies two specific victims, the IRS and G2 Handling Materials Holtschneider's scheme victimized us all and diminished the Government's abilities and resources to serve the entirety of this country.

Holtschneider in turn, used these embezzled monies to fund her gambling habits and pay for her son's bowling tournament expenses. Holtschneider did not commit these crimes to put food on the table. She concocted this scheme and stole these monies so that she could gamble the funds away. According to the financial records obtained by law enforcement, Holtschneider used embezzled funds that she had deposited into her Arvest bank account to gamble at several casinos. Holtschneider also used these embezzled funds to give money to her son, pay for personal items, and even pay for child support. Holtschneider admitted to agents that she had committed this fraud

6

scheme and embezzled these monies because she was angry with her perceived unfair treatment by her employer and not compensating her for her overtime work. During this time, Holtschneider was receiving an agreed salary from her employer, but she chose to embezzle more than a quarter million dollars over the span of just one year to appease her alleged anger instead of addressing the issue or seeking a different job. While the Government does not contest her statement, the financial records also prove that Holtschneider wasted a great deal of the stolen monies to simply gamble at area casinos.

Thus, upon considering the facts, when weighed with the other § 3553 factors, the Government asserts, consistent with the parameters of the plea agreement, that Holtschneider's crimes warrant a significant sentence. Even though 41 months' imprisonment for this scheme seems rather low in light of the crimes committed, this sentence falls within the recommended under the Sentencing Guideline Range and is in keeping with the plea agreement. Furthermore, the Government requests that any sentence of imprisonment be followed by 3 years of post-release supervision, full payment of restitution, payment of the Court's special assessment, and the finalization of the preliminary order of forfeiture. While the Court is not bound by the recommendations of the parties, given the true damage inflicted by this defendant's financial fraud, a substantial sentence at the high-end of the Sentencing Guideline Range is and is both reasonable and lenient under the circumstances and facts of the defendant's crimes.

### 2. *History and Characteristics of the Defendant*

As listed within the PSR, Holtschneider has a relatively minor criminal history resulting in a raw score of "1". (PSR 8-9, ¶¶ 37-42). As a result, Holtschneider greatly benefits from a much lower sentencing guideline range associated with a criminal history score of just "I." *Id.* When compared to the nature of her criminal conduct and the fact that her embezzlement literally

7

included hundreds of individual criminal acts that embezzled over a quarter million dollars from an untold number of victims, such a criminal history greatly reduces Holtschneider's sentencing guidelines to a point that effectively understates the effective guilty range given the true nature of her crimes in this case.

While Holtschneider has a criminal history score of "I", it should be noted that the defendant has prior convictions for stealing. (PSR 8, ¶¶ 28, 40.) While these convictions are old, one involves a felony stealing conviction. With this history in mind, Holtschneider placed herself in a position to have control over the financial affairs and well-being of others. Considering this scheme, the defendant's prior history of theft convictions becomes far more concerning. Given her knowledge and training in financial affairs, the Government is greatly concerned that her two prior convictions and the scheme that she has committed in this case involve only those criminal acts that she has been caught committing. As she has demonstrated in this case, Holtschneider is very capable of concealing her thefts and embezzlement schemes. Holtschneider used sophisticated techniques to successfully conceal her embezzlement from her employer, and this ability raises the disturbing question that her convictions were just those incidents in which she was actually caught. Despite the lengthy period of time between convictions, the Government believes that a clear pattern of Holtschneider being an economic predator has emerged.

According to the personal characteristics of the defendant, Holtschneider was born in Fort Polk, Louisiana. Holtschneider appears to have had a positive upbringing, where her mother and father were married and part of her life until they passed away. (PSR 10, ¶ 50.) Further, Holtschneider claims to have been physically and sexually abused by a maternal half-brother when she was a child. (PSR 12, ¶ 63.) Holtschneider admits to a substance abuse history that included the abuse of alcohol, marijuana, and methamphetamine. (PSR 13, ¶ 70.) Finally, Holtschneider

8

claims she has received counseling for her PTSD and the sexual abuse that was inflicted on her by a half-brother when she was a child. (PSR 12, ¶¶ 63-68.)

Holtschneider has not only had the benefits of receiving an education, she also completed 86 college credits when she attended Southwest Baptist University and Ozark Technical Community College. (PSR 14, ¶¶ 74-76.) Ultimately, Holtschneider benefitted from many positive life influences that allowed her to grow and possibly succeed. Despite these advantages, Holtschneider chose to put her greed and need to gamble above all else when committing hundreds of fraudulent acts that evolved into a scheme of embezzlement that caused the destruction of a long-standing family business. Holtschneider willfully and intentionally stole, embezzled and defrauded the very people who provided her with career, concealed her fraud from these same people allowing her to continue her embezzlement until it was revealed by the IRS, and placed a local business in financial jeopardy by intentionally and willfully failing to pay forward employment taxes taken from employees at G2.

Ultimately, Holtschneider carried out an embezzlement scheme against her employer that spanned approximately one year, resulting in over a quarter million dollars in losses, involving several hundred acts of fraud and embezzlement, violated the trust placed in her, and involved additional sophisticated techniques designed entirely to conceal her considerable theft scheme. In fact, Holtschneider efforts to commit these crimes were entirely successful in preventing G2 from detecting her fraud. Holtschneider's embezzlement was only stopped when the IRS contacted the owners of G2. Undersigned counsel has no doubt that had the IRS not moved to address the lack of payment of G2's employment taxes, Holtschneider would have continued her fraud, using these monies to feed her need to gamble. Upon considering all the history and characteristics of Holtschneider, the Government believes that a sentence of 41 months imprisonment, which is in

9

keeping with the Government's position stated within the plea agreement, followed by three years of post-release supervision is both warranted and reasonable considering the defendant's history and characteristics.

### 3. *Need to Promote Respect for the Law*

In this case, Holtschneider has demonstrated that she has little respect for the law as her fraud involved hundreds of individual criminal acts of embezzlement, as well as money laundering, and even tax evasion by failing to report these stolen funds on her taxes. While Holtschneider's crimes spanned a relatively brief period of approximately 1 year, she constructed and employed a sophisticated scheme that embezzled over $280,000 in that short period of time, while also covering her tracks. It is almost certain that Holtschneider will argue that her lack of a substantial criminal history and advanced age warrants a downward departure from the sentencing guidelines. Such an argument ignores the fact that had Holtschneider's criminal history been more severe, the sentencing range she faced would involve much greater periods of imprisonment than those she currently faces. Further, despite being of an age that she should have known better, Holtschneider chose to commit many felony offenses just two years ago. In this case, Holtschneider benefits from Sentencing Guidelines that fails to consider the true scope of the financial devastation that resulted from her actions. To allow such an argument would be akin to allowing Holtschneider to receive additional credit for an aspect of her history that is already built into the sentencing guidelines and provides this defendant with a substantial reduction in the Guideline Range when considered in context with the scope of her crimes.

While Holtschneider does not have a significant criminal history, her actions as charged involved hundreds of criminal acts that resulted in over $280,000 in economic losses and embezzlement. In other words, each act of fraud and embezzlement constitutes a separate and

10

distinct crime that this defendant committed when she embezzled employment taxes from the United States Treasury and the very employees she would with, all so that she could gamble even more than her regular salary allowed. The Government hopes that this Honorable Court would consider her embezzlement not as just one single act or simple scheme but actually involved hundreds of criminal acts of fraud while employing sophisticated techniques to carry out this complex fraud scheme. Placed in its proper context, the Government avers that a sentence of 41 months imprisonment is an appropriate sentence under the conditions agreed to between the parties under the plea agreement.

### 4.   *Need to Afford Adequate Deterrence to Criminal Conduct*

To the extent that rational actors are watching what the Court does here, a significant sentence of imprisonment provides a meaningful deterrent to the nature of the criminal conduct in which he engaged. Holtschneider not only embezzled over $280,000 over the short span of just a year, her actions resulted in the theft of monies from her employer, the theft of money from the employees of G2, as she kept this portion of their salary without returning it, or turning the monies over to the IRS as required, therein stealing from all taxpayers and citizens within this country. While it may not be able to easily find a similarly situated defendant when we examine the true scope of Holtschneider's crimes, specific deterrence is also especially important in this case. Holtschneider used her knowledge, education, and the trust placed with her at G2 to commit this scheme and every underlying criminal act. A substantial sentence of imprisonment is essential to deter both this defendant and others from committing these types of devastating economic crimes in our community. It is the hope of the Government that a 41-month sentence would specifically deter this defendant from ever engaging in any criminal acts moving forward. Thus, the

11

Government avers that its recommendations will adequately deter any future criminal conduct in the future.

### IV. <u>CONCLUSION</u>

The United States respectfully requests that the § 3553 factors, including the nature and circumstances of Inskip's embezzlement, her lack of a criminal history, the need to promote respect for the law, and the need to afford adequate deterrence, be considered in reaching an appropriate sentence in this case.

As such, the United States respectfully requests that this Court impose a sentence of 41 months imprisonment, followed by 3 years of supervised release, payment of restitution in the amount of at least $283,878.00, payment of a $200 Special Assessment, and finalization of the preliminary order of forfeiture. Even though the Court is not bound by the parties' recommendations, the United States' recommendation for such a sentence is in keeping with the plea agreement reached between the parties. Such a sentence is also supported by the facts and circumstances of this case, as well as the § 3553 factors associated with Holtschneider and her crimes.

Respectfully submitted,

R. MATTHEW PRICE
United States Attorney

*/s/ Patrick A.N. Carney*
PATRICK A.N. CARNEY
Assistant United States Attorney
Western District of Missouri
901 St. Louis Street, Suite 500
Springfield, Missouri 65806
(417)831-4406

12

**CERTIFICATE OF SERVICE**

I hereby certify that on this the _____ day of May, 2026, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which sent e-mail notification of such filing to all CM/ECF participants in this case.

*/s/ Patrick A.N. Carney*
PATRICK A.N. CARNEY

13